**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 9 2015**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 14-32889 |
| | ) | |
| Brian T. Robinson and | ) | Chapter 7 |
| Jaime L. Robinson, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtors' Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1), (2) and (3) [Doc. # 11] and Debtors' response [Doc. #15]. The court held a hearing on the motion that Debtors, their counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtors' Chapter 7 case unless they convert the case to Chapter 13.

## BACKGROUND

Debtors are married and have three minor children, ages 2, 9, and 13. Brian Robinson ("Robinson") is 33 years old and is employed at First Energy, where he has worked for 11 years in security. Jaime Robinson is not employed.

On August 6, 2014, Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that their debts are primarily consumer debts. Debtors' bankruptcy schedules show no priority debt and total unsecured nonpriority debt in the amount of $71,357.61, of which $36,000 is Jaime Robinson's student loan debt. Debtors have little or no non-exempt assets, which include Robinson's 401(k) plan valued at $8,000.

Debtors' Schedule I filed with their petition shows gross monthly income of Robinson in the amount of $7,745.09 and monthly income after payroll deductions in the amount of $4,402.58, which deductions include tax withholdings of $2,098.99. However, shortly before filing, Robinson changed the number of exemptions he claims for federal tax withholding purposes from zero to three. As this change results in less being deducted from his pay, Debtors' response to the UST's motion to dismiss includes an amended Schedule I[1] that Robinson testified is accurate and that shows gross monthly income of $7,479.12 and monthly income after payroll deductions in the amount of $4,702.64. [UST Ex. 4, p. 4-5]. Robinson explained that the decrease in his gross monthly income is due to thirty new security officers being hired during the three months following the filing of his petition, resulting in less overtime being offered, and that an additional eight officers are going to be hired.

Robinson's monthly payroll deductions reported on amended Schedule I include a 401(k) plan loan repayment of $249.25, which Robinson testified is in repayment of two loans totaling approximately $6,000 that he obtained in 2013, and tax withholdings in the amount of $1,859.32. [*Id.*]. The court, however, credits the testimony of bankruptcy analyst, Catherine Lowman, that Debtors' reported tax withholdings are overstated. Although Robinson's pay varies each week due to the amount of overtime he receives, between September 9, 2014, and October 3, 2014, Robinson received gross income in the total amount of $7,488.95, which is approximately the same gross monthly income reported on amended Schedule I. [*See* Debtors' Ex. B, pp. 11-15 (as summarized at UST Ex. 11)]. His tax withholdings during that period totaled only $1,376.70, approximately $480 less than the $1,859.32 reported on Debtors' amended Schedule I. [*Id.*]. After adjusting to include this amount in income, Debtors' monthly income after payroll deductions totals

---

[1] Debtors' amended Schedule I, although attached to their response, was not separately filed by them.

2

approximately $5,182 ($4,702 + $480).

Debtors' original Schedule J filed with their petition shows total monthly expenses in the amount of $4,362, including one $210 car payment, a home maintenance/repair expense of $65, and a transportation expense of $400. Thereafter, Debtors' response to the UST's motion also includes, together with their amended Schedule I, an amended Schedule J, showing total monthly expenses of $4,697. [UST Ex. 4, pp. 6-7]. In addition to increasing Debtors' home maintenance/repair expense to $100 and their transportation expense to $500, the amended Schedule J includes a $200 expense for Jaime Robinson's student loans, which Robinson testified have been in deferment but require repayment to begin in January 2015. [*See id.*]. At the hearing on the UST's motion to dismiss, Debtors offered a second amended Schedule J to further include a $230 car payment on their second car for total monthly expenses of $4,927. [Debtor's Ex. A, p. 3-4]. Robinson testified that they had not been making that car payment and had stated an intention to surrender the vehicle but have decided to keep it until it can be replaced. Debtors' monthly net income, after payroll deductions as adjusted above and after expenses as set forth on Debtors' second amended Schedule J, is approximately $255.

Robinson testified that he also received a $6,000 bonus in March 2014. Although he does not anticipate receiving one in 2015 because the company's "safety numbers were down," he testified that with one exception, he has received bonuses ranging from $3,000 to $7,000 every year for the past eleven years.

Debtors also received federal income tax refunds in the amount of $10,128 in 2013 and $9,999 in 2012. [UST Exs. 5 & 6]. The court credits Lowman's calculation and testimony that Debtors will receive a federal income tax refund of approximately $9,000 in 2015, given the excessive tax withholding during the first half of the year. [*See* UST Ex. 7]. Lowman testified that, notwithstanding Robinson's recent adjustment to his federal tax withholdings, Debtors will still receive income tax refunds of approximately $3,500 thereafter given their standard deduction, exemptions, and entitlement to the child tax credit of $1,000 per child. According to Lowman, the child tax credit is available until the child reaches age 17. As Debtors' children are ages 2, 9, and 13, they will receive approximately $3,500 for only three more years after which their refund will decrease to $2,500.

According to Debtors' Form B22A[2] means test calculation, they have above median income and no presumption of abuse arose under 11 U.S.C. § 707(b)(2). [UST Ex. 2, pp. 46-52]. Although the UST filed

---

[2]Effective December 1, 2014, Official Form B22A was changed. For cases filed on or after December 1, 2014, the Chapter 7 means test calculation would be set forth on new Official Forms B22A-1, B22A-1Supp, and B22A-2. Debtors' means test calculation is presented on Official Form B22A as in effect when they filed their petition. Fed. R. Bankr. P. 9009.

3

a motion to dismiss for abuse under § 707(b)(2) and (b)(3), he is now proceeding only under § 707(b)(3).

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA, Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007). As the movant, the UST carries the overall burden of demonstrating, by a preponderance of the evidence, that Debtors' case should be dismissed. *In re Weixel*, 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013).

In this case, the UST does not argue that Debtors filed their petition in bad faith but instead contends that the totality of their financial circumstances demonstrates that they are not needy and that granting them a discharge would be an abuse of the provisions of Chapter 7. Debtors are "needy" when "[their] financial predicament warrants the discharge of [their] debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone may be sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30

4

(Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126.

In this case, Robinson has a relatively stable source of above median income, having been employed at the same job for approximately 11 years. Although his overtime hours have decreased, according to Robinson, his amended Schedule I income is accurate. And Debtors' unsecured debts are less than the limits for eligibility for relief under Chapter 13. *See* 11 U.S.C. § 109(e).[3]

In arguing that Debtors have the ability to fund a Chapter 13 plan and pay a significant portion of their unsecured debt, the UST asserts that Debtors can redirect excessive tax withholdings and income tax refunds to pay unsecured creditors and that Debtors reported tax withholdings on amended Schedule I are overstated. The UST also asserts that the monthly student loan payment and Robinson's monthly 401(k) loan repayment should be treated as income available to fund a plan. For the reasons that follow, the court agrees that Debtors can make funds available to pay a meaningful portion of their unsecured debt.

Although Debtors received income tax refunds of approximately $10,000 for tax years 2012 and 2013, Robinson has adjusted his tax exemptions to decrease withholdings from his pay. Because this adjustment was made mid-year, Debtors will still receive a refund of approximately $9,000 for tax year 2014 and, according to Lowman, will receive refunds of approximately $3,500 for three years, after which their refund will decrease to approximately $2,500. Although not available on a monthly basis, because income tax refunds arise as the result of a taxpayer's overpayment of his tax liability or over-withholding from his pay, they are a source of income for a debtor and are included in a determination of Debtors' ability to pay unsecured creditors. *In re Jacob*, 447 B.R. 535, 543 (Bankr. N.D. Ohio 2010); *In re Edighoffer*, 375 B.R. 789, 797 (Bankr. N.D. Ohio 2007); *In re Fox*, No. 13-12566-RAG, 2014 WL 6066120, at *7, 2014 Bankr. LEXIS 4695, at *20 (Bankr. D. Md. Nov. 12, 2014) (citing cases). Considering a typical refund of only $2,500 equates to approximately $200 per month of over-withholding that could be used to pay creditors.

With respect to Jaime Robinson's student loan expenses, the court agrees that the $200 budgeted to pay her student loan expenses should be applied to a ratable distribution among all of Debtors' unsecured creditors. This court has previously held that the nondischargeability of a student loan is not, without more, a basis to permit a debtor to treat the student loan creditors more favorably than other unsecured creditors. *In re Rooney,* 436 B.R. 454, 459 (Bankr. N.D. Ohio 2010) (explaining that "to treat certain unsecured

---

[3]Debtors' debts escalated during a time when they incurred extraordinary expenses working through and traveling to help address a nephew's serious medical condition and treatment out of state.

creditors more favorably simply because they hold a nondischargeable claim would elevate such claims to a priority status that was not intended by Congress").

Relying on Sixth Circuit precedent and the plain language of § 707(b)(3), this court has held that the totality of a debtor's individual circumstances must be considered in determining whether a debtor's 401(k) contributions and repayment of 401(k) plan loans are reasonably necessary expenses in a § 707(b)(3) analysis. *In re Tucker*, 389 B.R. 535, 540-41 (Bankr. N.D. Ohio May 20, 2008) (citing *Behlke*, 358 F.3d at 435-36); *see In re Beckerman*, 381 B.R. 841, 848-49 (Bankr. E.D. Mich. 2008); *In re Gonzalez*, 378 B.R. 168, 174 (N.D. Ohio 2007)). As one court stated, "[t]here is little reason for a 'fresh start' that will only be answered with a substantial incapacity to provide for oneself at retirement." *In re King*, 308 B.R. 522, 531 (Bankr. D. Kan. 2004). This court has therefore held that debtors may seek bankruptcy relief while voluntarily saving for retirement or repaying a 401(k) loan if such savings or repayment appear reasonably necessary for the maintenance or support of the debtor or the debtor's dependents. *In re Tucker*, 389 B.R. at 540-41; *see Hebbring v. U.S. Trustee*, 463 F.3d 902, 907 (9th Cir. 2006) ("Courts must allow debtors to seek bankruptcy protection while voluntarily saving for retirement if such savings appear reasonably necessary for the maintenance or support of the debtor or the debtor's dependents."). Factors relevant to this determination include: (1) the debtor's age and time left until retirement; (2) the amount of the debtor's existing retirement savings (3) level of yearly income; (4) overall budget; (5) amount of monthly contributions; (6) needs of any dependents; and (7) other constraints that make it likely that retirement contributions are reasonably necessary expenses for this particular debtor. *Beckerman*, 381 B.R. at 848 (citing *Hebbring,* 463 F.3d at 907, *Taylor,* 243 F.3d at 129-30).

In this case, Debtors have above median income. Although their retirement savings are minimal, Debtors are not approaching retirement age such that interrupting their retirement saving at this time will result in an inability to provide for themselves in retirement. Rather, Robinson will have over 30 years at the conclusion of a Chapter 13 plan to continue to save for his retirement. The court is aware of no other constraints that would make Debtors' retirement savings at this time reasonably necessary. Under these circumstances, the court agrees with the UST that the 401(k) loan repayments could be applied, without depriving Debtors or their dependents of any necessity, to repay Debtors' unsecured debt rather than to fund Robinson's own retirement plan. *See Behlke*, 358 F.3d at 435 (quoting *In re Jones*, 138 B.R. 536, 539 (Bankr. S.D. Ohio 1991)("In these circumstances, 'it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the

6

same time paying their creditors less than a 100% dividend.'")).

As discussed above, Debtors' monthly net income, after payroll deductions and after expenses as set forth in Debtor's second amended Schedule J, is approximately $255. If Debtors apply that amount plus the $250 now used to repay Robinson's 401(k) plan and the $200 budgeted for student loan payments to fund a Chapter 13 plan over the sixty-month maximum plan duration for above-median income debtors, *see* 11 U.S.C. § 1322(d)(1), Debtors would have approximately $38,800 available after payment of the Chapter 13 Trustee's administrative expenses to pay on their remaining unsecured debt ($42,300 x .082). With no other adjustments to Debtors' budget, unsecured creditors could potentially receive a dividend of approximately 54 percent. *See In re Behlke*, 338 F.3d 429, 437 (6th Cir. 2004) (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors). To the extent Debtors also apply their income tax refunds and bonuses that may be received by Robinson to pay unsecured creditors, the dividend would be substantially higher.

The availability of debtors' remedies under state law and the relief that might be afforded through private negotiations are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has addressed these factors in this case. As the United States Trustee bears the burden of proof on the motion, *In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtors' financial problems.

In conclusion, the court finds that Debtors have reasonably stable income and are able to pay a meaningful portion of their unsecured debts out of their future income without Debtors or any of their dependents being deprived of adequate housing, food, clothing, or other necessities and that granting Debtors relief under Chapter 7 of the Bankruptcy Code would, therefore, be an abuse of the provisions of that chapter given the totality of their financial circumstances.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtors are allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the United States Trustee's motion to dismiss [Doc. #11] will be granted, and this case will be dismissed, by separate order of the court, without further notice or opportunity for hearing.

### ###